**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HAMILTON, | ) | CASE NO. 1:07-cv-02591 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD. C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MARGARET A. BEIGHTLER, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Robert Hamilton ("Hamilton"), challenges the constitutionality of his

conviction in the case of *State v. Hamilton*, Cuyahoga County Common Pleas Case No. CR-05-

463032.  Hamilton, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. §

2254 on August 24, 2007, with the United States District Court for the Northern District of Ohio.

On January 24, 2008, Warden Margaret Beightler ("Respondent") filed her Answer/Return of

Writ.  (Doc. No. 6.)  Hamilton did not file a Traverse.  This matter is before the undersigned

Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is

recommended that Hamilton's petition be DENIED.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Hamilton's conviction as follows:

[*P2]  At approximately eleven-thirty on the evening of January 23, 2005, two men walked into the British Petroleum ("BP") gas station located at the intersection of Memphis Avenue and Ridge Road.  The clerk working the night shift, Kimberly Keeney ("Keeney"), said she noticed the two men inside the store looking around. After the two men left, Keeney became suspicious and removed money from the cash register and placed it in the store safe.  As Keeney walked back toward the register, the same two men walked back into the store.  One of the men carried a gun.

[*P3]  As they entered the store, the man with the gun pointed the weapon at Keeney's side, ordered her to the back of the store, and asked her "where's the money?"  The other man who entered the BP gas station walked behind the register and attempted to open the cash drawer.  After he could not open the register, the man with the gun ordered Keeney back to the front of the store to open the drawer.  After she opened the register, the gunman ordered Keeney to the back of the store.  Keeney testified that the man without the gun withdrew the money from the register.  Keeney reported that amount to be approximately twenty-five dollars in bills and coins.  The two men then left the BP gas station.

[*P4]  After the two men left, Keeney locked the doors to the store and called the police.  Officer Dan Meadows ("Meadows") responded to the call and spoke with Keeney, documenting her statements in an incident report.  Meadows gathered the description of the two suspects and their vehicle and broadcast the information to other police units in the area.  Meadows also requested the instore surveillance tape but learned from Keeney that the store manager would have to be contacted to remove the tape from its locked container.

[*P5]  At the request of the police officers, manager Gregory Abramczyk ("Abramczyk") took the video surveillance tape to the Brooklyn police station.  Abramczyk informed the police that the tape documented the robbery, as well as the date, time, and location of the BP gas station.  Abramczyk also confirmed that the two robbers stole approximately thirty-five dollars from the BP gas station.

[*P6]  From the video surveillance, officers were able to create a print-out of the two suspects involved in the robbery of the BP gas station.  Officers identified a possible suspect, retrieved his photo from the Bureau of Motor Vehicles, and showed Keeney a photo line-up that included this picture.  Keeney identified the suspect as the male who robbed the BP gas station.  Officers later determined that this initial suspect did not rob the BP gas station on January 23, 2005.  After exhausting all leads on the robbery, Detective Ken Fittro ("Fittro") contacted Channel 3 news and supplied the news station with the surveillance video.  Channel 3 aired the video and as a result, Tamarah Dauria contacted the police and identified the man carrying the gun during the robbery as Robert Hamilton.  Tamarah Dauria stated that she and her family used to live next door to Hamilton

and his mother.  Tamarah Dauria and her husband, David Dauria, later testified that the man in the surveillance video and in the pictures taken therefrom was Hamilton.

[*P7]  Police officers placed Hamilton under arrest and later secured search warrants for his apartment in Lakewood, his sister's house, and his vehicle. While at Hamilton's apartment, officers spoke with apartment manager Nichole French ("French") and told her that they were there to investigate a crime and to execute a search warrant on Hamilton"s apartment.  The officers showed French the pictures from the BP gas station robbery and asked her if she recognized anyone.  French recognized Robert Hamilton.  French later identified Hamilton in court as the man in the surveillance photos.  During trial, Keeney was unable to identify Hamilton as the man who robbed the BP gas station on January 23, 2005.

*State v. Hamilton*, 2006 Ohio App. LEXIS 1789, 2006-Ohio-1949 at ¶¶2-7 (Ohio Ct. App. 2006)

## II.  Procedural History

### A.  Conviction

On March 3, 2005, the Cuyahoga County Grand Jury charged Hamilton with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01, two counts of kidnapping in violation of O.R.C. § 2905.01, and one count of possessing a weapon while under a disability in violation of O.R.C. § 2923.13.  (Doc. No. 6, Exh. 1.)  The first three counts of the indictment contained both firearm and repeat violent offender specifications.  *Id*.

Hamilton, represented by counsel, pled "not guilty" and the matter proceeded to a jury trial.  Prior to trial, the court bifurcated the repeat violent offender specifications and the weapons under disability charge.  (Doc. No. 6, Exh. 5.)  Hamilton was found guilty as charged. (Doc. No. 6, Exh. 2.)  He later stipulated to having a previous conviction, and the court found him guilty of having a weapon while under disability.  *Id*.  He received a total sentence of ten years imprisonment.  *Id*.

**B.    Direct Appeal**

Hamilton, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").

On April 20, 2006, the state appellate court affirmed in part Hamilton's conviction, but his sentence was vacated because the trial court failed to impose a term of post-release control. (Doc. No. 6, Exh. 5.)  The state appellate court also vacated Hamilton's conviction for having a weapon while under disability, as Hamilton never executed a written waiver of jury trial.  *Id*.  On May 1, 2006, Hamilton filed an application for reconsideration.  (Doc. No. 6, Exh. 8.)  The state appellate court denied Hamilton's application for reconsideration on May 26, 2006.  (Doc. No. 6, Exh. 9.)

Hamilton, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 6, Exh. 6.)  On October 4, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 6, Exh. 7.)

On October 16, 2006, Hamilton, *pro se*, filed a motion for delayed appeal with the Supreme Court of Ohio challenging the state appellate court's order of May 26, 2006 denying his application for reconsideration.  (Doc. No. 6, Exh. 10.)  The Supreme Court of Ohio dismissed Hamilton's motion for delayed appeal.  (Doc. No. 6, Exh. 11.)

**C.    Resentencing**

On December 8, 2006, Hamilton, represented by new counsel, appeared for resentencing. At that time, Hamilton entered a plea of guilty to the charge of having a weapon while under a disability.  (Doc. No. 6, Exh. 12.)  Hamilton was sentenced to an aggregate term of ten years imprisonment with five years of post-release control.  *Id*.

-4-

**D.    Federal Habeas Petition**

On August 24, 2007, Hamilton, *pro se*, filed a Petition for Writ of Habeas Corpus and

asserted the following grounds for relief:

GROUND ONE: Defendant was denied due process of law and a fair trial when
the Court declined to grant a mistrial when prejudicial testimony was offered that
defendant had been in jail before.

GROUND TWO: Defendant was denied due process of law when the Court
allowed the investigating detective to testify to stating his opinion of the guilt of
defendant together with other improper information

GROUND THREE: Defendant was denied a fair trial when the investigating
detective talked about a lie detector test.

GROUND FOUR: The defendant was denied due process of law when the Court
instructed the jury on flight.

GROUND FIVE: Defendant was denied due process of law when the Court
diluted the requirement of purpose in its jury instructions.

GROUND SIX: Defendant was denied due process of law when the Court
allowed a witness to testify who had not been disclosed on discovery.

GROUND SEVEN: Defendant was denied effective assistance of Counsel.

GROUND EIGHT: A defendant is denied due process of law where there is
insufficient evidence to prove all of the elements of the offense beyond a
reasonable doubt.

(Doc. No. 1.)

### III.  Review on the Merits[1]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

---

[1]  Respondent has not argued that any of Hamilton's claims are procedurally defaulted.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly

-6-

established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court

must determine whether the state court's decision constituted an objectively unreasonable

application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts

defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.    Ground One: Failure to Grant a Mistrial**

Hamilton asserts that he was denied due process of law and a fair trial when the trial court

failed to grant a mistrial.  Specifically, Hamilton believes the following testimony mandated a

mistrial:

> [Prosecutor]: And can you describe the nature of your relationship with the
> defendant?
>
> [Witness]: Actually I was friends with his mother before he moved back in with
> his mom.  I would help her out and bring stuff over, like cook for her and stuff
> like that, sit on the front porch with her at night and stuff.  She's elderly.  And I
> used to just be friends with her, and then I didn't even know that she had a son
> that was in jail.
>
> [Defense Counsel]: Objection.
>
> [The Court]: Sustained.
>
>                                        * * *
>
> [The Court]: On this last remark, I have sustained an objection. You're to
> disregard that answer that was given.

(Tr. 99-100.)

The state appellate court found that the trial court's curative instruction was appropriate and

that a jury is presumed to follow instructions given by a trial judge.  *State v. Hamilton*, 2006-

Ohio-1949 at ¶¶13-15.  Further the state appellate court found that, in light of the strength of the

-7-

case against him, Hamilton had failed to demonstrate any material prejudice stemming from the objectionable testimony.  *Id.*

Respondent argues that the trial court's ruling was discretionary based on state law and, therefore, not cognizable upon habeas review absent showing a fundamentally unfair trial.  (Doc. No. 6 at 11.)

The Sixth Circuit has stated that the decision of a *federal* district court not to grant a mistrial is reviewed under an abuse of discretion standard, but "[w]hen conducting habeas review of a trial decision of a state court not touching on a specific provision of the Bill of Rights, the standard of review is even higher..."  *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (finding that reversal was not warranted unless the trial court's failure to grant a mistrial, based on a prejudicial comment, deprived the defendant of fundamental fairness); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 641-42 (1974) ("[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'").  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law" unless the error is so egregious as to amount to a denial of fundamental fairness.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The *Zuern* court identified "five factors to consider in determining whether a mistrial is warranted after an improper reference: (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." 336 F.3d at

485.  In Hamilton's case, the application of these factors does not favor his argument that a

mistrial was necessary.  The witness's remark that Hamilton was in jail was not directly

responsive to a legitimate question posed by the prosecution.  The trial judge immediately

sustained an objection and instructed the jury to disregard the answer given by the witness.

Further, there is no evidence that the prosecution acted in bad faith, though the trial judge was

"disappointed" that the witness was not cautioned against making any such references.  (Tr.

101.)  Finally, while the witness's remark had the potential of being prejudicial, there was

sufficient evidence to support Hamilton's conviction.  Under these circumstances, the trial

court's failure to grant a mistrial was not erroneous and, more importantly, did not render

Hamilton's trial fundamentally unfair.

**B.    Grounds Two and Three: Admission of the Testimony of Detective Fittro**

Hamilton alleges that he was denied due process of law when the trial court allowed

Detective Kenneth Fittro ("Fittro") to testify to the following: (1) his opinion as to Hamilton's

guilt; (2) out-of-court statements made by witnesses; and, (3) that another suspect in the robbery

was released after passing a lie detector test.[2]  (Doc. No. 1.)

Defense counsel objected to all of the above testimony and the trial court sustained all of

the objections.  *Hamilton*, 2006-Ohio-1949 at ¶¶20-21.  As a result, the state appellate court

concluded that Hamilton was not prejudiced because there was no evidence that the jury

considered the inadmissible testimony.

Respondent argues that none of the trial court's relevant rulings were erroneous, but,

---

[2]  Though Hamilton also asserts that he was denied due process of law when the trial
court allowed Fittro to testify concerning "other improper information," he fails to
identify which other portions of Fittro's testimony were improper.

-9-

assuming *arguendo,* that there was error, Hamilton was not denied a fundamentally fair trial. *Id.* A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Nonetheless, a federal court may provide habeas relief if a state court's error in interpreting or applying its own laws rendered a defendant's trial so "fundamentally unfair" as to have deprived appellant of substantive due process. *Id.*

Hamilton's counsel objected to each of the statements that Hamilton now alleges were improper. The trial court sustained the objections and did not allow the objectionable testimony to be admitted. Hamilton has not identified a single erroneous state evidentiary ruling that would render his trial unfair. Taken as a whole, and in the context of all the evidence, the Court finds nothing in Fittro's testimony or the actions of the trial court in relation thereto that would render Hamilton's trial fundamentally unfair. Thus, his claims in grounds two and three are without merit.

**C.    Grounds Four and Five: Improper Jury Instructions**

Hamilton next argues that he was denied due process of law when the trial court gave improper jury instructions. Specifically, Hamilton contends that a jury instruction on "flight" was inappropriate given the facts of his case and the jury instruction on "purpose" diluted the statutory requirements.

In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were both erroneous and, taken as a whole, so infirm that the entire trial was rendered

-10-

fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *Id.*  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Whalen v. Trippett*, 2000 U.S. App. LEXIS 16216 at *7 (6th Cir. 2000) (citing *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)).  A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law.  *Henderson*, 431 U.S. at 155.  "It is within [a trial judge's] province ... to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."  *United States v. Frederick*, 406 F.3d 754, 762 (6th Cir. 2005) (*quoting United States v. Blakeney*, 942 F.2d 1001, 1013 (6th Cir. 1991)).

Hamilton argues that the jury instruction concerning flight was improper because it assumed that Hamilton was at the scene of the crime.  This, he alleges, was prejudicial as identification was a disputed factor in his case.  (Doc. No. 1.)  The jury instructions given read as follows:

> There may be evidence in this case to indicate that the defendant fled from the scene of the crime.  Flight does not in and of itself raise the presumption of guilt

-11-

but it may show consciousness of guilt or a guilty connection with a crime.  If you find the defendant did flee from the scene of the crime, you may consider this circumstance in your consideration of the guilt or innocence of the defendant.

(Tr. 228.)

The state appellate court emphasized that the jury instructions only stated that there "may" be evidence that Hamilton fled the scene and, therefore, there was no presumption of guilt inherent in the jury instruction.  *Hamilton*, 2006-Ohio-1949 at ¶39.  As a result, the court found that Hamilton was not denied due process.  *Id*.  Hamilton's argument – that the instruction created a presumption that he was at the scene thereby resulting in prejudice – is not supported by the record.  His argument assumes that the jury ignored the totality of the instructions and unreasonably interpreted the flight instruction as an affirmative finding that he was at the crime scene.  There is no evidence of record to support either assumption.  This case is far from one of those exceedingly rare cases where an infirm jury instruction rendered a petitioner's trial fundamentally unfair.

In addition, Hamilton argues that the trial court improperly diluted the "purpose" element in its jury instructions and thereby deprived him of due process.  (Doc. No. 1.)  Pursuant to Ohio R.C. § 2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  The allegedly objectionable instruction given by court reads as follows:

When the central idea, essence, or gist of the offense is prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.

-12-

(Tr. 225.)

The state appellate court found that the trial court's jury charge did not misstate the legal definition of "purposely." *Hamilton*, 2006-Ohio-1949 at ¶46.  A comparison of the statutory language reveals that the trial court's instruction accurately paraphrased the statutory definition of "purpose."  Furthermore, the trial court's charge constituted a verbatim recitation of the purpose instruction contained in Ohio's jury instructions. *See* 4-409 O.J.I. 409.01.  Because the jury instruction was not erroneous but rather an accurate summary of Ohio law, Hamilton's argument that the instruction deprived him of due process is without merit.

**D.  Ground Six: Admission of the Testimony of an Undisclosed Witness**

Hamilton argues that he was denied due process of law when the trial court allowed a previously undisclosed witness, David Dauria ("Mr. Dauria"), to testify at trial. (Doc. No. 1.) Hamilton argues that the trial court's finding that he was not prejudiced by the admission of this testimony is erroneous because the prosecution would not have introduced the evidence if it did not aid its case against him. *Id*.  Hamilton, however, confuses the potential impact of Mr. Dauria's testimony with the impact of the prosecution's failure to disclose Mr. Dauria as a witness.  It is the latter that the trial court found was not prejudicial.[3]

The state appellate court found that the trial court did not abuse its discretion in allowing the testimony of Mr. Dauria and further found that Hamilton failed to demonstrate that the

---

[3]  Defense counsel objected to the testimony of Mr. Dauria because it was "trial by ambush" and the testimony to be offered br Mr. Dauria was cumulative to the testimony of his wife Tamarah Dauria ("Mrs. Dauria").  (Tr. 111.)  Initially, the prosecution intended to call on the Dauria's son, a disclosed witness, but the parents did not want their son to testify.  When asked by the trial court how Mr. Dauria's testimony would prejudice the defense while the son's testimony would not have, defense counsel indicated that he had prepared a different "tactic" for the child.  *Id*.

admission of such testimony resulted in any prejudice. *Hamilton*, 2006-Ohio-1949 at ¶33. The state appellate court explained that the "foreknowledge [that Mr. Dauria would testify] would not have aided Hamilton in the preparation of his defense [because] Dauria's testimony was cumulative to his wife's. Therefore, any preparation made for [Mrs.] Dauria's testimony would have aided Hamilton in questioning [Mr.] Dauria." *Id*.

Respondent contends that Ohio Criminal Rule 16, which requires the disclosure of witnesses, is not a cognizable claim. (Doc. No. 6 at 19-21.) As stated above, a federal court may not provide habeas relief based on an erroneous application of state law unless the error has rendered a defendant's trial fundamentally unfair. This Court agrees with the state appellate court's analysis that Hamilton was not prejudiced. Thus, assuming *arguendo* that the trial court's admission of Mr. Dauria's testimony was erroneous, Hamilton was not prejudiced because defense counsel knew the purpose of Mr. Dauria's testimony – to confirm the identification of Hamilton from a surveillance video – and his testimony was cumulative to that of Mrs. Dauria, a disclosed witness who had already testified. These circumstances hardly constitute an "ambush" as alleged by defense counsel. Hamilton cannot demonstrate that he was deprived of a fundamentally fair trial as a result of Mr. Dauria testifying. As such, Hamilton's sixth ground for relief lacks merit.

**E. Ground Seven: Ineffective Assistance of Counsel**

Hamilton alleges that he was denied effective assistance of trial counsel because counsel failed to request an identification instruction and did not file a motion to suppress either the identification procedure or Hamilton's custodial statements. (Doc. No. 1.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his

counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court found that Hamilton failed to satisfy either prong of the *Strickland* test. *Hamilton*, 2006-Ohio-1949 at ¶50. The court noted that Hamilton "merely argues what defense counsel should have done, without any reference to the probability of a different outcome," and that his bare allegations fail to demonstrate either a deficient performance or resulting prejudice. *Id*. The state appellate court's application of the *Strickland* test was not

-15-

unreasonable.  Second-guessing defense counsel's decisions, without more, is not sufficient to show a deficient performance.[4]  Further, Hamilton never explained how, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Although a successful suppression of all *three* identifications could have affected the outcome, Hamilton's habeas petition contains no argument concerning the identifications made by Mr. and Mrs. Dauria while making only a cursory attack on the identification made by Ms. French.  Therefore, even if Ms. French's identification had been successfully suppressed, it is highly unlikely that a different outcome would have resulted given the remaining identifications made by Hamilton's former neighbors.  Thus, Hamilton's claim that counsel was ineffective for failing to seek the suppression of Ms. French's identification is without merit.

Hamilton's argument that counsel was ineffective for failing to seek suppression of his custodial statements is also without merit.  "[T]he law [is] clear that the failure to sign a waiver, after *Miranda* warnings have been given, does not render subsequent statements inadmissible. *See United States v. Eicher*, 1991 U.S. App. LEXIS 4072 (6th Cir. Mar. 7, 1991), *citing United States v. Eirin*, 778 F.2d 722, 728 (11th Cir. 1985) ("Merely refusing to sign a waiver of rights form without an attorney's guidance is not synonymous with an affirmative request for assistance of counsel."); *United States v. Vaughn*, 496 F.2d 622, 622 (6th Cir. 1974) ("The refusal to sign a written waiver, standing alone, does not render inadmissible statements or evidence voluntarily given after full warnings.")  Thus, Hamilton's refusal to sign the waiver did not, by

---

[4]  Hamilton does not explain any of the following: (1) what sort of jury instruction defense counsel should have requested; (2) how the identification procedures were tainted, especially with respect to the Daurias, that would have justified filing a suppression motion; or (3) the basis for seeking to suppress his statement beyond his refusal to sign the form.

itself, negate the admissibility of his statements.  Hamilton has not presented any additional arguments that would have justified the suppression of his statements.  Moreover, the admission of Hamilton's statement, and defense counsel's failure to seek its suppression, can hardly be construed to have affected the outcome of the trial where three witnesses identified Hamilton as the perpetrator.

Finally, Hamilton asserts that defense counsel was deficient for failing to request a jury instruction concerning identification.  Again, Hamilton's argument is undeveloped as it (1) fails to identify any specific instruction that should have been requested, (2) fails to meaningfully argue how counsel's failure to request the instruction was deficient; and (3) fails to explain how counsel's alleged deficiency resulted in the requisite prejudice under *Strickland*.  The trial court gave the following instruction:

> You, the jury, are the sole judges of the facts, of the credibility of the witnesses, and of the weight to be given to the testimony of each witness.  To weigh the evidence you must consider the credibility or believability of each person testifying.  You will apply the tests for truthfulness which you apply in your daily lives.  In determining the credibility of a witness, you should consider the interest or bias the witness has in the outcome of the verdict; the witness' appearance, manner and demeanor while testifying before you; the witness' candor and frankness or lack of candor or frankness; the consistency of the witness' testimony with other known facts in the case; the witness' accuracy of memory or inaccuracy of memory; the witness' intelligence or lack of intelligence; the reasonableness or unreasonableness of the witness' testimony; the opportunity the witness had to see or hear or know the truth of the facts and circumstances concerning the things to which the witness has testified; and any or all other facts and circumstances surrounding the testimony which in your judgment would add or detract from the credibility and weight of the witness' testimony.

> Applying these tests you will assign to the testimony of each witness the weight which you determine to be proper.  You are instructed that you are not bound to believe something to be a fact simply because it is testified to by a witness.  If you believe from all the evidence that a witness was mistaken or has testified untruthfully to a fact, you are not required to believe the testimony

simply because the witness was under oath.  It is within your province as a juror to determine in the exercise of your honest and impartial judgment what testimony is worthy of belief and what testimony is not worthy of belief.  As a matter of law, you may believe a portion of the testimony of a particular witness and disbelieve the rest of his or her testimony, you may believe all of the testimony of a particular witness, or you may disbelieve all of the testimony of a particular witness.

(Tr. 218-220.)

The trial court's charge was, in fact, very similar to Ohio's proposed jury instructions concerning the credibility of witnesses and witness identifications.  *See* 4-405 O.J.I. § 405.20. The court's charge accurately summarized most of the key points.  Because all three of the witnesses knew Hamilton well and identified him only after the fact through surveillance footage or a photograph, the portions of the Ohio jury instructions relating to eyewitness testimony and identifying witnesses were not particularly relevant in this case.[5]  Also, the comment to the Ohio

---

[5]  5. EYEWITNESS TESTIMONY. Some things you may consider in weighing the testimony of identifying witness(es) are:

> 1. Capacity of the witness, that is, the (age) (intelligence) (defective senses, if any,) and the opportunity of the witness to observe.
>
> 2. The witness' degree of attention at the time he observed the offender.
>
> 3. The accuracy of witness' prior description (or identification, if any).
>
> 4. Whether witness had had occasion to observe defendant in the past.
>
> 5. The interval of time between the event and the identification.
>
> 6. All surrounding circumstances under which witness has identified defendant (including deficiencies, if any, in lineup, photo display or one-on-one).

If, after examining the testimony of the identifying witness you are not convinced beyond a reasonable doubt the defendant is the offender, you must find defendant not guilty.

-18-

jury instruction expressly states that "[t]his charge on identification should be given only if it, or parts thereof, are specifically applicable to the facts in issue."  4-405 O.J.I. § 405.20, *citing  State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (Ohio 1981).

As the trial court's instruction was not unreasonable given the nature of the testimony in this case, counsel's failure to request a particular identification charge was not ineffective. Further, there is no indication that the outcome would have been different had a more detailed instruction been given.  Hamilton's claim of ineffective assistance of counsel is without merit.

**F.      Ground Eight: Sufficiency of the Evidence**

Finally, Hamilton alleges that the evidence presented at trial was insufficient to prove each element of the offenses of which he was convicted beyond a reasonable doubt.  (Doc. No. 1.) Specifically, Hamilton alleges that there was no evidence that he is the individual who robbed the gas station because the gas station attendant could not identify him as the perpetrator.  He further asserts that there was no forensic or other evidence found at the crime scene or his apartment connecting him to the crime.  Hamilton also argues that the firearm specifications were not supported by sufficient evidence because (1) the gun was not admitted into evidence and (2) no tests were conducted to ascertain whether the gun was operable.[6]

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to

---

4-405 O.J.I. § 405.20.

[6]  Neither Hamilton's habeas petition nor his brief before the state appellate court contains any argument alleging that his kidnapping convictions were not supported by sufficient evidence.  (Doc. Nos. 1 and 6, Exh. 3.)  Thus, the state appellate court did not address the sufficiency of the evidence as related to the kidnapping convictions and this issue is not before the Court.

-19-

constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for

determining if a conviction is supported by sufficient evidence is "whether after reviewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443

U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own

determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of

witnesses.  *Id*.; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are

required to give deference to factual determinations made in state court and "[a]ny conflicting

inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v.*

*Tate*, 1993 U.S. App. LEXIS 29301 (6th Cir. Nov. 9, 1993), *citing Walker*, 703 F.3d at 969-70;

*Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the

nature of constitutional sufficiency review.)

    The state appellate court overruled Hamilton's sufficiency of the evidence argument as

explained below.

> [*P56]  The jury convicted Hamilton of aggravated robbery, which R.C. 2911.01
> prohibits as follows: "No person, in attempting or committing a theft offense ***
> shall have a deadly weapon on or about the offender's person or under the
> offender's control and either display the weapon, brandish it, indicate that the
> offender possesses it, or use it."

>  [*P57]  The jury also found Hamilton guilty of one- and three-year firearm
> specifications.  R.C. 2941.141 and 2941.145 state the following elements of this
> offense: "The offender had a firearm on or about the offender's person or under
> the offender's control while committing the offense *** and displayed the
> firearm, brandished the firearm, indicated that the offender possessed the firearm,
> or used it to facilitate the offense."

> [*P58]  In its case in chief, the State of Ohio presented the following evidence:
> testimony from Keeney stating that, while she was working at the BP gas station,
> two men walked into the store and robbed it at gunpoint; the gunman pointed the

-20-

gun at Keeney's side and ordered her around the store; store surveillance, including still photos, showed the robbery; and three witnesses who testified that the man in the store surveillance photos holding the gun was Hamilton.

[*P59]  We find that the State of Ohio presented sufficient evidence to permit a rational jury to find Hamilton guilty of aggravated robbery and the one- and three-year firearm specifications.  Accordingly, the trial court did not err when it denied Hamilton's motions for acquittal.

*Hamilton*, 2006-Ohio-1949 at ¶¶56-59.

The gas station attendant's testimony that two men robbed the store while one of them brandished a firearm is sufficient to demonstrate that a robbery occurred.  Further, the gas station attendant authenticated surveillance video from the incident and, on the basis of that video, three witnesses identified Hamilton as one of the perpetrators.  (Tr. 103-05, 114-115, 132-36, 185-88.)  This evidence was sufficient to allow a reasonable juror to conclude beyond a reasonable doubt that Hamilton was one of the two men who robbed the gas station.

Further, the gas station attendant's testimony that one of the men, who the other witnesses identified as Hamilton, had a gun is also sufficient to satisfy the deadly weapon element of robbery and the firearm specifications.  The Sixth Circuit has observed that "[u]nder Ohio law, operability of the firearm which is the basis of [a firearm] specification is an element which must be proven beyond a reasonable doubt.  Although the firearm may not be available to the prosecution for test firing or admission into evidence, the fact of operability nevertheless may be established by circumstantial evidence."  *Tilley v. McMackin*, 989 F.2d 222, 225 (6th Cir. 1993); *see also State v. Thompkins*, 78 Ohio St. 3d 380, 678 N.E.2d 541 (Ohio 1997).[7]  In *State v.*

---

[7]  Pursuant to Ohio R.C. § 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control

-21-

*Murphy*, 49 Ohio St. 3d 206, 551 N.E.2d 932 (Ohio 1990), the Ohio Supreme Court held that a jury could infer that a firearm was operable on the basis of statements of the defendant and the manner in which the gun was used.  Therein, a store clerk and a customer testified that the defendant announced a holdup and produced a gun that was waved back and forth followed by statements that he would kill the clerk if he was not given money.  *Id.*

Here, the gas station attendant testified that she looked down and saw the gun, which was placed against her side.  (Tr. 124.)  Thereafter, she was told to get to the back of the store and was asked where the money was located.  *Id.*  Although the robbers did not make any threats, the absence of explicit threats is not dispositive.  The Ohio Supreme Court has held that the "trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm" and that the *Thompkins* decision clarifies that "actions alone, without verbal threats, may be sufficient circumstances to establish the operability of a firearm."  *State v. Reynolds*, 79 Ohio St. 3d 158, 162 at n. 3, 679 N.E.2d 1131 (Ohio 1997) (*citing Thompkins*, 678 N.E.2d 541).

Thus, a jury could reasonably have found from the totality of the evidence that the handgun was operable as defined by Ohio law.  Accordingly, Hamilton's eighth ground for relief is without merit.

---

over the firearm.

## V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Hamilton's Petition be

DENIED.

s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 8, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**