IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERT HAMILTON,** | ) CASE NO.  1:07 CV 2591 |
| ) | |
| Petitioner, | ) |
| ) | |
| v. | ) **JUDGE DONALD C. NUGENT** |
| ) | |
| **MARGARET A. BEIGHTLER, Warden,** | ) Magistrate Judge Greg White |
| ) | |
| Respondent. | ) **MEMORANDUM OPINION** |
| | **AND ORDER** |

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Greg White.  The Report and Recommendation (Document #7) is ADOPTED by this Court and Petitioner's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 (Document #1) is DENIED.

The factual history of this case, as set forth by the Magistrate Judge, is as follows:

> In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Hamilton's conviction as follows:
>
>> [*P2] At approximately eleven-thirty on the evening of January 23, 2005, two men walked into the British Petroleum ("BP") gas station located at the intersection of Memphis Avenue and Ridge Road. The clerk working the night shift, Kimberly Keeney ("Keeney"), said she noticed the two men inside the store looking around. After the two men left, Keeney became suspicious and removed money from the cash register and placed

it in the store safe. As Keeney walked back toward the register, the same two men walked back into the store. One of the men carried a gun.

[*P3] As they entered the store, the man with the gun pointed the weapon at Keeney's side, ordered her to the back of the store, and asked her "where's the money?" The other man who entered the BP gas station walked behind the register and attempted to open the cash drawer. After he could not open the register, the man with the gun ordered Keeney back to the front of the store to open the drawer. After she opened the register, the gunman ordered Keeney to the back of the store. Keeney testified that the man without the gun withdrew the money from the register. Keeney reported that amount to be approximately twenty-five dollars in bills and coins. The two men then left the BP gas station.

[*P4] After the two men left, Keeney locked the doors to the store and called the police. Officer Dan Meadows ("Meadows") responded to the call and spoke with Keeney, documenting her statements in an incident report. Meadows gathered the description of the two suspects and their vehicle and broadcast the information to other police units in the area. Meadows also requested the instore surveillance tape but learned from Keeney that the store manager would have to be contacted to remove the tape from its locked container.

[*P5] At the request of the police officers, manager Gregory Abramczyk ("Abramczyk") took the video surveillance tape to the Brooklyn police station.  Abramczyk informed the police that the tape documented the robbery, as well as the date, time, and location of the BP gas station. Abramczyk also confirmed that the two robbers stole approximately thirty-five dollars from the BP gas station.

[*P6] From the video surveillance, officers were able to create a print-out of the two suspects involved in the robbery of the BP gas station. Officers identified a possible suspect, retrieved his photo from the Bureau of Motor Vehicles, and showed Keeney a photo line-up that included this picture. Keeney identified the suspect as the male who robbed the BP gas station. Officers later determined that this initial suspect did not rob the BP gas station on January 23, 2005. After exhausting all leads on the robbery, Detective Ken Fittro ("Fittro") contacted Channel 3 news and supplied the news station with the surveillance video.  Channel 3 aired the video and as a result, Tamarah Dauria contacted the police and identified the man carrying the gun during the robbery as Robert Hamilton.  Tamarah Dauria stated that she and her family used to live next door to Hamilton and his mother. Tamarah Dauria and her husband, David Dauria, later testified that the man in the surveillance video and in the pictures taken therefrom was Hamilton.

> [*P7] Police officers placed Hamilton under arrest and later secured search warrants for his apartment in Lakewood, his sister's house, and his vehicle. While at Hamilton's apartment, officers spoke with apartment manager Nichole French ("French") and told her that they were there to investigate a crime and to execute a search warrant on Hamilton"s apartment. The officers showed French the pictures from the BP gas station robbery and asked her if she recognized anyone. French recognized Robert Hamilton. French later identified Hamilton in court as the man in the surveillance photos. During trial, Keeney was unable to identify Hamilton as the man who robbed the BP gas station on January 23, 2005.

*State v. Hamilton*, 2006 Ohio App. LEXIS 1789, 2006-Ohio-1949 at ¶¶2-7 (Ohio Ct. App. 2006).

The procedural history of this case, as set forth by the Magistrate Judge, is as follows:

**A. Conviction**

On March 3, 2005, the Cuyahoga County Grand Jury charged Hamilton with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01, two counts of kidnapping in violation of O.R.C. § 2905.01, and one count of possessing a weapon while under a disability in violation of O.R.C. § 2923.13. (Doc. No. 6, Exh. 1.) The first three counts of the indictment contained both firearm and repeat violent offender specifications. *Id*.

Hamilton, represented by counsel, pled "not guilty" and the matter proceeded to a jury trial. Prior to trial, the court bifurcated the repeat violent offender specifications and the weapons under disability charge. (Doc. No. 6, Exh. 5.) Hamilton was found guilty as charged. (Doc. No. 6, Exh. 2.) He later stipulated to having a previous conviction, and the court found him guilty of having a weapon while under disability. *Id*. He received a total sentence of ten years imprisonment. *Id*.

**B. Direct Appeal**

Hamilton, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").

On April 20, 2006, the state appellate court affirmed in part Hamilton's conviction, but his sentence was vacated because the trial court failed to impose a term of post-release control. (Doc. No. 6, Exh. 5.) The state appellate court also vacated Hamilton's conviction for having a weapon while under disability, as Hamilton never executed a written waiver of jury trial. *Id*. On May 1, 2006,

Hamilton filed an application for reconsideration. (Doc. No. 6, Exh. 8.) The state appellate court denied Hamilton's application for reconsideration on May 26, 2006. (Doc. No. 6, Exh. 9.)

Hamilton, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 6, Exh. 6.) On October 4, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 6, Exh. 7.)

On October 16, 2006, Hamilton, *pro se*, filed a motion for delayed appeal with the Supreme Court of Ohio challenging the state appellate court's order of May 26, 2006 denying his application for reconsideration. (Doc. No. 6, Exh. 10.) The Supreme Court of Ohio dismissed Hamilton's motion for delayed appeal. (Doc. No. 6, Exh. 11.)

### C. Resentencing

On December 8, 2006, Hamilton, represented by new counsel, appeared for resentencing.  At that time, Hamilton entered a plea of guilty to the charge of having a weapon while under a disability. (Doc. No. 6, Exh. 12.) Hamilton was sentenced to an aggregate term of ten years imprisonment with five years of post-release control. *Id*.

### D. Federal Habeas Petition

On August 24, 2007, Hamilton, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: Defendant was denied due process of law and a fair trial when the Court declined to grant a mistrial when prejudicial testimony was offered that defendant had been in jail before.
>
> GROUND TWO: Defendant was denied due process of law when the Court allowed the investigating detective to testify to stating his opinion of the guilt of defendant together with other improper information.
>
> GROUND THREE: Defendant was denied a fair trial when the investigating detective talked about a lie detector test.
>
> GROUND FOUR: The defendant was denied due process of law when the Court instructed the jury on flight.

       GROUND FIVE: Defendant was denied due process of law when the Court diluted the requirement of purpose in its jury instructions.

       GROUND SIX: Defendant was denied due process of law when the Court allowed a witness to testify who had not been disclosed on discovery.

       GROUND SEVEN: Defendant was denied effective assistance of Counsel.

       GROUND EIGHT: A defendant is denied due process of law where there is insufficient evidence to prove all of the elements of the offense beyond a reasonable doubt.

(Doc. No. 1.)

On January 24, 2008, Respondent filed a return of writ. (Docket #6.)

On September 8, 2008, the Magistrate Judge issued his Report and Recommendation. (Docket #7), recommending that the Petition be denied.

No objections to the Report and Recommendation were filed.

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b)(3) provides:

       The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The text of Rule 72(b) addresses only the review of reports to which objections have been made; it does not indicate the appropriate standard of review for those reports to which no objections have been properly made. The Advisory Committee on Civil Rules commented on a

district court's review of *unopposed* reports by magistrate judges. In regard to subsection (b) of Rule 72, the advisory committee stated: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted).

The U.S. Supreme Court stated in *Thomas v. Arn*, 474 U.S. 140, 150 (1985): "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." Notwithstanding the foregoing, the Court has reviewed the Report and Recommendation of the instant case *de novo*. *See Delgado v. Bowen*, 782 F.2d 79 (7th Cir. 1986).

## Conclusion

The Court has reviewed the Report and Recommendation and finds it to be well-reasoned and correct. The Court agrees with, and adopts, the findings and conclusions of Magistrate Judge White as its own. The Court hereby ADOPTS the Report and Recommendation of Magistrate Judge White (Document #7) in its entirety. Petitioner's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 is hereby DENIED.

Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).

IT IS SO ORDERED.

                                              s/Donald C. Nugent
                                              DONALD C. NUGENT
                                              United States District Judge

DATED: September 30, 2008